(929 P.2d 780)
No. 75,092

DONNA D. MAAS, Administratrix of the Estate of ALLEN RAY MAAS, Deceased, and DONNA D. MAAS, individually and on behalf of the Heirs at Law of ALLEN RAY MAAS, Deceased, *Appellee*, v. HUXTABLE AND ASSOCIATES, INC., a Kansas Corporation, ROBERT E. GREY and HANOVER INSURANCE COMPANY, a Delaware Corporation, *Defendants*, v. STATE WORKERS COMPENSATION SELF-INSURANCE FUND, *Appellant*.

Opinion filed December 20, 1996.

*Daniel J. Carroll*, of Kansas Department of Administration, of Topeka, for appellant.

*Steven Hornbaker* and *Steven L. Opat*, of Harper, Hornbaker, Altenhofen & Opat, Chartered, of Junction City, for appellee.

Before RULON, P.J., PIERRON, J., and TOM MALONE, District Judge, assigned.

MALONE, J.: The State Workers Compensation Self-Insurance Fund (Fund) appeals from the judgment of the district court approving a settlement agreement between the plaintiff, Donna D. Maas, and the defendants, Huxtable and Associates, Inc., Robert E. Grey, and Hanover Insurance Company. The primary issue on appeal is whether the district court properly applied K.S.A. 44-504(d) to reduce the Fund's lien. The Fund further appeals the assessment of attorney fees under K.S.A. 44-504(g). We affirm.

On May 11, 1993, Allen Ray Maas suffered fatal injuries while working on highway construction for the Kansas Department of Transportation (KDOT). Maas was struck by a vehicle driven by the defendant, Robert E. Grey, who was working within the scope of his employment with Huxtable and Associates, Inc.. Under K.S.A. 44-575, the Fund commenced paying workers compensation death benefits to plaintiff, Donna D. Maas, Maas' widow. The Fund additionally paid medical and funeral expenses for Maas.

Plaintiff filed this action on May 26, 1993, against Robert E. Grey and Huxtable and Associates, Inc., alleging that Grey's negligence was a cause of her husband's death. Hanover Insurance Company, Huxtable's insurance carrier, was also named as a defendant. On May 12, 1994, the defendants filed a motion to join KDOT to compare fault under K.S.A. 60-258a(c). KDOT was nei-

ther copied on this motion nor served with process. On July 1, 1994, the plaintiff and the defendants stipulated in a pretrial order that the defendants could compare the fault of KDOT. KDOT did participate in some discovery pertaining to this case.

The plaintiff and the defendants negotiated a settlement agreement, subject to the approval of the district court, in which the plaintiff, on behalf of all the heirs of the deceased, received $425,000 in full and total settlement of their claims. A motion for apportionment under K.S.A. 60-1905 was filed on February 8, 1995. Notice was given, and the motion was scheduled for hearing. A separate settlement was reached among the heirs in which the three adult daughters agreed to accept $27,500 each in complete settlement of their claims. Plaintiff accepted full responsibility regarding subrogation payments to the Fund.

The settlement agreement provided that Allen Maas and the State of Kansas (KDOT) were each 25% at fault in causing Maas' injuries and death. The agreement further provided that the lien for workers compensation benefits would be reduced based upon the percentage of negligence attributed to both Allen Maas and KDOT. The agreement additionally provided for the Riley County Clerk to hold the settlement amount until the lien had either been litigated or decided. Neither KDOT nor the Fund was a party to the settlement agreement. The Fund received a copy of the settlement agreement by fax on February 17, 1995. On February 28, 1995, the Fund filed a motion to intervene and notice of lien. The Fund did not object to the amount of the settlement. However, the Fund objected to portions of the settlement agreement which apportioned fault between the decedent and KDOT and which attempted to reduce the subrogation lien accordingly.

The district court approved the amount of the settlement in a journal entry dated April 11, 1995, but scheduled a separate hearing on the objections raised by the Fund. On June 12, 1995, the parties presented evidence in the form of depositions, motor vehicle accident reports, and other discovery documents, and made arguments to the court. At the conclusion of the hearing, the district court found the Fund's lien should not be reduced by the

percentage of fault attributed to the decedent under the clear and unambiguous language of K.S.A. 44-504(d).

However, the district court found that assessing 25% of the fault to KDOT was a "fair, just, and equitable" agreement which was supported by substantial competent evidence. The court specifically found the settlement agreement was not entered into in bad faith or in any attempt to defeat the rights of the workers compensation carrier. The court further found the Fund did not intervene in a timely manner and could not complain it was not a part of the settlement process. The court further found that allowing the Fund to block the settlement simply because the Fund disagreed with KDOT's alleged percentage of fault would have a "chilling effect on settling litigation." Accordingly, the court reduced the Fund's subrogation lien based upon the 25% negligence attributed to KDOT. The district court assessed attorney fees to the Fund at the same rate the plaintiff agreed to pay her retained attorneys in the case, 33⅓%. The court's reduction of the Fund's lien amounted to a reduction in recovery by the Fund in the amount of $83,116.25.

The Fund filed a motion to alter or amend, which was denied by the district court. This appeal follows.

The Fund argues that unless an employee's third-party action goes to trial, a court cannot apply K.S.A. 44-504(d) to reduce an employer's subrogation lien based upon the employer's negligence. The Fund maintains that by assessing 25% fault to KDOT without its consent or a trial, the district court violated both Kansas law and the United States Constitution. This court's review of a question of law is unlimited. See *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

This case involves interpretation of K.S.A. 44-504. K.S.A. 44-504(a) allows a party receiving workers compensation benefits to pursue a negligence claim against a third-party tortfeasor. K.S.A. 44-504(b) grants the employer a subrogation lien against the employee's recovery from a third party to the extent of the compensation and medical aid provided by the employer. The primary purpose of the employer's subrogation rights is to prevent double recovery by the employee. The injured worker has 1 year and a deceased's representatives have 18 months to commence an action

against the third party. The employer may intervene in the negligence action, and the district court determines the extent of the employer's participation in the action. Under 44-504(c), if the worker or his representatives fail to timely file an action, the claim is assigned to the employer, who can prosecute the action.

K.S.A. 44-504(d) provides that an employer's subrogation lien should be diminished by the percentage of the recovery attributed to the negligence of the employer. This section states:

"If the negligence of the worker's employer or those for whom the employer is responsible, other than the injured worker, *is found* to have contributed to the party's injury, the employer's subrogation interest or credits against future payments of compensation and medical aid, as provided by this section, shall be diminished by the percentage of the recovery attributed to the negligence of the employer or those for whom the employer is responsible, other than the injured worker." (Emphasis added.)

Here, the Fund's primary argument is that by assessing 25% fault to KDOT without its consent or a trial, the district court violated the due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution. However, this argument fails to consider the fact that the United States Constitution protects a person's *property rights*. An employer's right to subrogation is not a property right grounded in the Constitution, but rather a statutory right granted by the legislature. Kansas courts have consistently held that the extent and nature of the subrogation rights of an employer under the workers compensation statutes are matters for legislative determination. *McGranahan v. McGough*, 249 Kan. 328, 334, 820 P.2d 403 (1991); *Brabander v. Western Cooperative Electric*, 248 Kan. 914, 917, 811 P.2d 1216 (1991); *Negley v. Massey Ferguson, Inc.*, 229 Kan. 465, 469, 625 P.2d 472 (1981).

In *Brabander*, our Supreme Court was interpreting the proper formula for computing diminution of subrogation rights under K.S.A. 44-504(d). In noting that an employer's subrogation rights are fixed by statute, the court stated:

"As the extent and nature of the subrogation rights of an employer under the workers compensation statutes are matters for legislative determination, the legislature has broad latitude in its enactments. It could have left the statutes as they

were with no diminution of subrogation rights where an employer has been found to be negligent. It could have provided that any finding of employer fault totally eliminated the employer's subrogation rights. In between these two extremes, numerous possibilities of formulas for computing diminution of the subrogation interest exist . . . ." 248 Kan. at 917-18.

In other words, the Kansas Legislature could completely eliminate an employer's subrogation rights if so inclined, without any constitutional ramifications. We understand some states have no subrogation statute and in these states an employer has no lien for workers compensation benefits. See 2A Larson, The Law of Workmen's Compensation § 74.11 (1996). We are satisfied an employer's interest in a workers compensation lien is taken from the four corners of the statute and is not a right guaranteed by the Constitution.

Consequently, the issue before us is one of statutory construction, *i.e.*, what did the legislature intend when adopting K.S.A. 44-504(d) and, specifically, when using the language "is found" in terms of reducing an employer's statutory subrogation lien? To focus our discussion, certain principles of statutory construction should be considered. The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414, 799 P.2d 1011 (1990). In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. *Bell v. Simon*, 246 Kan. 473, 476, 790 P.2d 925 (1990). When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. *Randall v. Seemann*, 228 Kan. 395, Syl. ¶ 1, 613 P.2d 1376 (1980). Furthermore, workers compensation statutes should be liberally construed in favor of the worker if such construction is compatible with legislative intent. *Nordstrom v. City of Topeka*, 228 Kan. 336, 340, 613 P.2d 1371 (1980).

We understand K.S.A. 44-504(d) was enacted by the legislature in response to *Negley v. Massey Ferguson, Inc.*, 229 Kan. 465. In *Negley*, plaintiffs receiving workers compensation benefits filed a

third-party action under K.S.A. 44-504. The employer was brought into the action to determine its percentage of negligence and in fact was found to be more than 50% at fault at trial. Judgment was rendered in favor of the plaintiffs, and the employer sought to enforce its lien without any reduction based upon the employer's negligence. The district court enforced the lien in its entirety, and our Supreme Court affirmed. The *Negley* court noted the extent and nature of an employer's subrogation rights are matters for legislative determination and, at the time, no statutory language provided for a reduction in the amount of the lien regardless of the employer's negligence. Our Supreme Court noted the inequities of the situation but indicated the issue was for legislative determination. The legislature enacted 44-504(d) the following year. The language of 44-504(d) clearly expresses a legislative intent that an employer's subrogation lien should be reduced based upon the percentage of negligence attributed to the employer. How the legislature intended the employer's percentage of negligence to be determined, however, is not clearly stated in the statutory language.

The Fund argues it is not bound by the settlement agreement because it was not a party to the settlement. See generally *Bright v. LSI Corp.*, 254 Kan. 853, 856, 869 P.2d 686 (1994) (stipulations made by parties in a judicial proceeding are binding only upon those who agree to the stipulation). In Kansas, courts in comparative negligence cases have consistently held that one tortfeasor cannot, by settlement, bind nonsettling tortfeasors without their consent. *Guillan v. Watts*, 249 Kan. 606, 609, 822 P.2d 582 (1991) (citing *Ellis v. Union Pacific R.R. Co.*, 231 Kan. 182, 192, 643 P.2d 158, *aff'd on rehearing* 232 Kan. 194, 653 P.2d 816 [1982]). The Fund argues, therefore, that the findings of fault by the plaintiff and the defendants are not binding on the Fund and should not be used to reduce its lien.

This argument misses the mark because the settlement agreement between plaintiff and defendants here was approved by the district court after a hearing. Evidence was admitted consisting of the discovery record in the case, and both the plaintiff and the Fund presented arguments on the issue of KDOT's percentage of

negligence. The Fund is not being forced to accept a settlement between the parties. The real issue in this case is whether the procedure followed by the district court in approving the settlement and in making findings satisfies the requirements of K.S.A. 44-504(d).

Although no Kansas appellate court cases are directly on point, the Fund points to *Leroy v. Hartford Steam Boiler Inspec. & Ins. Co.*, 695 F. Supp. 1120, 1136-37 (D. Kan. 1988). There, employees who were injured in an explosion at a municipal power plant, and surviving relatives of deceased employees, brought personal injury and wrongful death claims against various defendants. The plaintiffs all received workers compensation benefits, and their recovery against the defendants was subject to. the subrogation rights of the employer. All the claims in the case were ultimately settled or disposed of by summary judgment. Some of the plaintiffs who settled claimed the employer's subrogation lien should be reduced based upon the employer's alleged negligence. Judge Saffels found that any effort to apply K.S.A. 44-504(d) to reduce the subrogation lien would be defeated because no trial had occurred and the city's percentage of fault was never determined. Judge Saffels said:

"[A]ny effort to apply that provision [K.S.A. 44-504(d)] in this case is defeated by the fact that there will not be a trial of this case. All claims have settled or have been disposed of by summary judgment. Since no determination of the City's fault will be made, the court cannot reduce INA/Aetna's entitlement to the subrogation funds accordingly." 695 F. Supp. at 1137.

Here, the plaintiff distinguishes *Leroy* by arguing that the settlements in *Leroy* were never approved by the court and no effort was made to have the employer's fault judicially determined. Instead, the plaintiff points to *McGranahan v. McGough*, 249 Kan. 328. There, an injured employee filed a workers compensation claim and received benefits totaling $12,616.29. The injured worker further filed a negligence action against a third party. The plaintiff and the defendant ultimately settled the case for $10,000 and specifically agreed to designate $6,000 of the settlement as pain and suffering and $3,000 as loss of consortium. The plaintiff argued the amounts designated as pain and suffering and loss of consortium did not constitute "compensation and medical aid pro-

vided by the employer." 249 Kan. at 333. The district court found the settlement agreement was fair, just, and equitable and only allowed the employer to recover $1,000 in medical expenses, less attorney fees.

The *McGranahan* court ultimately concluded the portion of the settlement designated as pain and suffering was subject to the employer's subrogation lien. However, the Supreme Court concluded the portion of the settlement designated as loss of consortium did not constitute "compensation and medical aid provided by the employer." Accordingly, our Supreme Court affirmed the trial court's determination that the award of $3,000 for loss of consortium was not subject to subrogation.

*McGranahan* is distinguishable because an earlier version of K.S.A. 44-504(b) was at issue. Further, the settlement in *McGranahan* had nothing to do with the liability of the employer or the apportionment of negligence between the parties. Nevertheless, *McGranahan* presents a situation very similar to the present case.

In *McGranahan*, the parties specifically structured a settlement in such a way that affected an employer's subrogation lien. Loss of consortium, which is an element of damages, is usually determined by the factfinder based upon evidence presented at trial. There was no trial in *McGranahan*, but instead the parties settled by designating a portion of the recovery as loss of consortium. The employer, whose subrogation lien was affected by this settlement, was not a party to the agreement. The district court, with apparently less evidence than was presented in the present case, approved the settlement agreement as being fair, just, and equitable and not part of a bad faith effort to circumvent the employer's lien. Our Supreme Court concluded there was nothing in the record showing the trial court erred in making this finding and affirmed the judgment.

Here, at the settlement hearing, the district court reviewed evidence in the form of depositions, motor vehicle accident reports, and other discovery documents. There is nothing in the record to reflect that the Fund was denied an opportunity to call witnesses or to present other evidence. After considering the evidence, the

district court specifically found that assessing 25% of the fault to KDOT "was reasonable under the totality of the facts and circumstances." The court further specifically found the settlement agreement was not entered into in bad faith or in any attempt to defeat the employer's lien.

Here, the district court noted that 44-504(d) was enacted to reduce an employer's lien based upon its percentage of negligence and this provision should apply to cases that are settled as well as litigated cases. The district court noted that had this case gone to trial, KDOT probably would not have even participated in the trial. In addressing the Fund's due process arguments, the district court relied heavily upon the safeguard of judicial review, noting that any attempt to reduce an employer's subrogation lien must be approved at a hearing in district court subject to appellate review. Finally, the district court noted that the law favors settlements and in this case the Fund still saved a substantial sum of money as a result of the third-party action and settlement even after the court reduced its lien.

After reviewing the record, we disagree with the Fund's claim the district court "violated Kansas law" by assessing fault to KDOT without its consent or a formal trial. Instead, we conclude that K.S.A. 44-504(d) applies to third-party actions that are settled as well as litigated, and the procedure followed by the district court in making its findings in this case satisfied all statutory requirements. The district court heard evidence and considered arguments from all parties before making its findings on the record. There is nothing in the language of 44-504(d) as expressed by the legislature to indicate the Fund was entitled to anything more. If the public policy of this state requires more due process than what was provided in this case before an employer's subrogation lien can be reduced, this is an issue which can be appropriately addressed by the legislature.

Next, we must decide if the district court's findings are supported by substantial competent evidence.

"Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.] Stated in another way, 'substantial evidence' is

such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]" *Williams Telecommunications Co. v. Gragg*, 242 Kan. 675, 676, 750 P.2d 398 (1988).

The district court relied primarily upon the deposition testimony of the defendant's expert, Joseph J. Costner, Jr., in assessing 25% of the fault to KDOT. The Fund claims the court ignored the testimony of another expert in the case, who testified by deposition that there was no liability on the part of KDOT. However, the district court specifically noted that it reviewed "the entire discovery record." Unfortunately, much of what the district court reviewed, including the deposition transcripts, has not been included in the record on appeal. "An appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, we presume that the action of the trial court was proper." *State v. Bright*, 229 Kan. 185, Syl. ¶ 6, 623 P.2d 917 (1981).

The record on appeal does include a written summary of the defense expert's testimony. This summary expresses the witness' opinion that KDOT was significantly at fault based on technical deficiencies in the placing of warning signs on the highway. Based upon this testimony alone, the district court's findings are supported by substantial competent evidence and will not be disturbed on appeal.

Finally, the Fund argues the amount of attorney fees assessed against the Fund was unreasonable. The district court is an expert in the area of attorney fees and can draw on and apply its own knowledge and expertise in evaluating their worth. The reasonable value of attorney fees rests within the sound discretion of the court, and this determination will not be disturbed on appeal unless the district court has abused its discretion. See *City of Wichita v. BG Products, Inc.*, 252 Kan. 367, 372-73, 845 P.2d 649 (1993) (quoting *Buchanan v. Employers Mutual Liability Ins. Co.*, 201 Kan. 666, Syl. ¶¶ 9-11, 443 P.2d 681 [1968]).

K.S.A. 44-504(g) authorizes the district court to apportion attorney fees between the Fund and the worker's dependents. Here, the Fund asked the court to award plaintiff's attorneys 25% of the amount of workers compensation benefits the Fund had paid to

the date the settlement agreement was approved. Instead, the court assessed attorney fees against the Fund of 33 ⅓% of past compensation paid and future credits.

The Fund argues that K.S.A. 44-536 limits attorney fees to 25% for representation of an injured worker in a workers compensation case. This has no relevance, however, to a personal injury action such as the instant case. This court has previously upheld a one-third contingency fee in a similar case. See *Lemery v. Buffalo Airways, Inc.*, 14 Kan. App. 2d 301, 789 P.2d 1176, *rev. denied* 246 Kan. 767 (1990). The Fund argues that because it was forced to intervene to protect its interest in the case, the amount of attorney fees was unreasonable. However, as noted by the district court, the Fund ultimately saved a substantial amount of future benefits that would have been paid had it not been for the third-party tort claim and its settlement. We are unable to conclude that the district court abused its discretion in assessing attorney fees.

Affirmed.