Jerry Allen ENFIELD, by and through his Conservator and Natural Mother, Mae ENFIELD, Plaintiff,

v.

A.B. CHANCE COMPANY, a subsidiary of Emerson Electric Company; and Emerson Electric Company, Defendants,

and

City of Goodland, Kansas, Intervenor.

No. 94–1423–JTM.

United States District Court, D. Kansas.

Oct. 26, 1999.

Carston C. Johannsen, Gould Law Offices, Chtd., L.L.C., Lenexa, KS, David A. Hoffman, Donald W. Vasos, Law Offices of Donald W. Vasos, Shawnee Mission, KS, James E. Olds, James E. Olds, Ltd, Northfield, MN, for plaintiff.

Michael P. Oliver, Wallace, Saunders, Austin, Brown & Enochs, Chtd, Overland Park, KS, James M. McVay, Watkins, Calcara, Rondeau, Friedeman, Bleeker, Glendenning & McVay, Chtd, Great Bend, KS, Sean T. McGrevey, McCormick, Adam & Long, P.A., Overland Park, KS, for City of Goodland, Kansas, intervenor.

Larry L. Boschee, Pearce & Durick, Bismark, ND, for Emerson Electric Co., defendant.

## ORDER

MARTEN, District Judge.

Three motions are currently pending before the court: (1) Enfield's motion to enforce the surety's liability; (2) the City of Goodland's motion to enforce its workers compensation lien; and (3) Enfield's motion for a determination of the City of Goodland's diminished lien, credit against future workers compensation payments, and proportionate share of attorney fees and expenses.

During a telephone conference on September 20, 1999, Enfield's counsel informed the court that the motion to enforce the surety's liability is now moot. Therefore, the court will address the two remaining motions, which will involve determining the amount of the workers compensation lien, credit against future workers compensation payments, and the City

of Goodland's proportionate share of attorney fees and expenses, if any.

## I. Facts

On September 28, 1992, Enfield was severely and permanently injured in a work-related accident involving a Pitman Polecat manufactured by the defendant, A.B. Chance Company ("Chance"). At the time of his accident, Enfield was working as an electrical lineman for the City of Goodland ("the City"). Employers Mutual Insurance Company ("EMIC") was and still is the workers compensation carrier for the City for Enfield's claims.

After the accident, EMIC hired a private adjusting company and a mechanical engineer to investigate the accident. The engineer offered a negative opinion about the viability of a product liability lawsuit. On August 16, 1994, Enfield retained his current counsel after two other law firms had declined employment on his third-party claim. Enfield's contract of employment with current counsel provided for a contingent attorney's fee to be paid on a sliding scale of 33⅓% if the case was settled, 40% if the case was tried and 50% if the matter was appealed or tried for a second time. Enfield's counsel retained an engineer, conducted a preliminary investigation, and filed this lawsuit on September 23, 1994. EMIC retained counsel and intervened on behalf of the City on April 3, 1995. The City monitored discovery and attended trial. It did not retain an expert witness nor did it call witnesses on its behalf at trial. The City rested following the presentation of Enfield's case-in-chief.

On November 10, 1997, the jury returned its verdict, awarding damages in the amount of $3,466,004.00 and assigning 50% fault to Chance and 50% fault to the City. After reducing the award of damages by 50% to account for the City's percentage of fault, the court entered judgment against Chance and in favor of Enfield in the amount of $1,733,002.00. Total case

expenses are $223,044.89. Enfield's counsel advanced $195,036.14 in case expenses and the City and EMIC advanced $28,008.75.

Chance appealed to the Tenth Circuit Court of Appeals. The City did not assist or participate in assembling the record or filing a brief on appeal. Enfield responded to Chance's appeal, and argued the cause before the Court of Appeals on January 20, 1999. The City did not appear at oral argument and did not otherwise assist in the appeal. On April 7, 1999, the Tenth Circuit affirmed the judgment of the district court. On April 30, 1999, the Tenth Circuit denied Chance's petition for rehearing, and on May 20, 1999, it denied Chance's motion to stay the issuance of mandate.[1] On June 9, 1999, Chance tendered payment of the judgment, plus statutory interest.

On March 12, 1999, EMIC claimed it was entitled to a lien in the amount of $253,460.67, plus interest for benefits paid to date. On March 16, 1999, the City served notice of a $506,921.35 Workers Compensation Lien. On April 16, 1999, the City served an Amended Workers Compensation Lien, claiming a lien in the amount of $253,460.67, an amount that represents the City's interpretation of K.S.A. 44–504(d). Enfield disputes EMIC's and the City's claim that they have a lien.

## II. Workers Compensation Lien

The parties' dispute involves the interpretation of K.S.A. 44–504. K.S.A. 44–504(a) permits a party receiving workers compensation benefits to pursue a negligence claim against a third-party tortfeasor. K.S.A. 44–504(b) gives the employer a subrogation lien against the employee's recovery from a third party to the extent of the compensation and medical aid provided by the employer. "The primary purpose of the employer's subrogation rights is to prevent double recovery by the em-

---

**1.** The Supreme Court denied Chance's petition for certiorari on October 4, 1999. *See*

*A.B. Chance Co. v. Enfield,* —— U.S. ——, 120 S.Ct. 284, 145 L.Ed.2d 238 (1999).

ployee." *Maas v. Huxtable & Assocs., Inc.*, 23 Kan.App.2d 236, 239, 929 P.2d 780 (1996). The employer may intervene in the negligence action, and the district court determines the extent of the employer's participation in the action, including the apportionment of costs and fees. K.S.A. 44–504(b).

K.S.A. 44–504(d) states that an employer's lien should be diminished by the percentage of the recovery attributed to the negligence of the employer:

> If the negligence of the worker's employer or those for whom the employer is responsible, other than the injured worker, is found to have contributed to the party's injury, the employer's subrogation interest or credits against future payments of compensation and medical aid, as provided by this section, *shall be diminished by the percentage of the recovery attributed to the negligence of the employer* or those for whom the employer is responsible, other than the injured worker.

K.S.A. 44–504(d) (emphasis added). The parties in this action dispute the interpretation of the language "shall be diminished by the percentage of the recovery attributed to the negligence of the employer," Enfield argues the City's lien should be reduced by an amount equal to the percentage of the "recovery" attributable to the negligence of the City. The City argues that the diminution is to be determined by applying its percentage of fault to its subrogation interest.

The Kansas Supreme Court has interpreted the proper formula for computing diminution of subrogation rights under K.S.A. 44–504(d). *See Brabander v. Western Coop. Elec.*, 248 Kan. 914, 811 P.2d 1216 (1991). But, before discussing the Court's interpretation in *Brabander*, it is important to note the history of K.S.A. 44–504(d).

Prior to 1982, K.S.A. 44–504 did not provide for reduction of an employer's subrogation lien if the employer was found to be partially at fault for the employee's injuries, even though K.S.A. 60–258a es-

tablished comparative fault. *Brabander*, 248 Kan. at 917, 811 P.2d 1216. "The Kansas Supreme Court recognized the inequities in allowing a partially negligent employer to recover full subrogation in *Negley v. Massey Ferguson, Inc.*, 229 Kan. 465, 468–69, 625 P.2d 472 (1981)." *Id.* However, the Court refused to remedy the inequities, because "[t]he extent and nature of the subrogation rights of an employer under the workmen's compensation statutes are matters for legislative determination." *Negley*, 229 Kan. at 469, 625 P.2d 472. The Kansas Legislature recognized the Court's concerns and amended K.S.A. 44–504 effective July 1, 1982, by adding subsection (d). *Anderson v. National Carriers, Inc.*, 240 Kan. 101, 103, 727 P.2d 899 (1986). When the Legislature first enacted K.S.A. 44–504(d), it stated:

> If the negligence of the worker's employer or those for whom the employer is responsible, other than the injured worker, is found to have contributed to the party's injury, the employer's subrogation interest or credits against future payments of compensation and medical aid ... shall be diminished by the percentage of the damage award attributed to the negligence of the employer or those for whom the employer is responsible, other than the injured worker.

*Id.* (quoting K.S.A.1985 Supp. 44–504(d)).

In *Brabander*, the Court was called to interpret the meaning of "shall be diminished by the percentage of the damage award attributed to the negligence of the employer." *Brabander*, 248 Kan. at 918, 811 P.2d 1216. In that case, the damage award was $327,876.46, and the employer's percentage of fault was fixed at 53%. The Court determined that the "percentage of the damage award attributed to the negligence of the employer is 53 percent of $327,876.46, which computes to $173,-774.52." *Id.* The Court found that the Legislature did not intend for the diminution to be determined by applying the

employer's percentage of fault to the subrogation interest itself:

> Had the legislature intended that the diminution was to be determined by applying the employer's percentage of fault or negligence to the subrogation interest itself, it could have so provided as it did in the provision in Kansas Automobile Injury Reparations Act, enacted in 1977, currently codified as K.S.A.1990 Supp. 40–3113a(d) as follows:
>
>> "In the event of a recovery pursuant to K.S.A. 60–258a, and amendments thereto, the insurer or self-insurer's *right of subrogation shall be reduced by the percentage of negligence attributable to the injured person.*" (Emphasis supplied.)

*Id.* Therefore, the *Brabander* formula for determining an employer's diminished lien is as follows:

> **diminished lien = lien − [damages ×
> % of employer's fault].**

The Court's decision in *Brabander* opened the door for the Legislature to amend K.S.A. 44–504(d). The Legislature seized that opportunity and amended the statute in 1993. However, it did not amend the statute to mirror the Kansas Automobile Injury Reparations Act. Instead, it replaced "damage award" with "recovery," the effect of which is to enhance the employer's subrogation recovery, but not to the extent argued by the City in this case. Thus, the new formula for determining the diminished lien is as follows:

> **diminished lien = lien − [recovery ×
> % of employer's fault].**

Only one case has addressed K.S.A. 44–504(d) since the 1993 amendment. *See Maas,* 23 Kan.App.2d 236, 929 P.2d 780. In *Maas,* the Kansas Court of Appeals did not directly address the issue of computing the diminished lien.[2] However, the trial

court relied upon and cited *Brabander* as authority for its determination of the workers compensation fund's diminished lien, *see* Hearing Tr. at 11–12, and the Court of Appeals impliedly approved the formula employed by the trial court, which appears to be the one set forth above, *i.e.,* diminished lien = lien − [recovery × % of employer's fault].[3] *Maas,* 23 Kan. App.2d at 245, 929 P.2d 780.

■ When the *Brabander* formula, as modified by the 1993 amendment to K.S.A. 44–504(d), is applied to the current case, the City's subrogation lien for benefits paid to date is extinguished. The amount of the City's payments for compensation and medical aid to date is $506,921.35; the City's fault is 50%; and Enfield's recovery is $1,733,002.00. Calculating the diminished lien results in a negative figure of $359,-579.65:

> Diminished Lien = Lien − [Recovery − % of Employer's Fault]
>
> Diminished Lien = $506,921.35 − [$1,733,002.00 × 50%]
>
> Diminished Lien = $506,921.35 − $866,-501.00
>
> Diminished Lien = ($359,579.65)

### III. Future Credit

K.S.A. 44–504(b) grants a credit when the amount of recovery "exceeds the amount of compensation and medical aid paid to date." The formula for determining the amount of the future credit, is the recovery, less the amount of benefits paid to date. Thus, in this case the future credit would be $1,226,080.65 ($1,733,-002.00 − $506,921.35).

Future credits, like subrogation liens, are diminished when the employer is found to be at fault. K.S.A. 44–504(d). The mechanism prescribed by 44–504(d) to di-

---

**2.** The Court of Appeals addressed whether K.S.A. 44–504(d) applies to actions that are settled as well as litigated and determined that it does. *Maas,* 23 Kan.App.2d at 245, 929 P.2d 780.

**3.** The workers compensation fund's lien was reduced by $83,116.25. One can arrive at that figure by multiplying the plaintiff's total recovery, $332,465.00, by 25%, the employer's percentage of fault. *See.* Appellee's Br. to the Kan.Crt.App. at 21.

minish a future credit is the same formula as that used to determine the diminished lien: "credits against future payments of compensation and medical aid ... shall be diminished by the percentage of the recovery attributed to the negligence of the employer." *Id.* Therefore, it follows that the formula should be:

**diminished future credit = future credit – [recovery × % of employer's fault].**

Applying the formula set forth above to this case results in a future credit of $359,579.65:

Diminished Future Credit = $1,226,080.65 – [$1,733,002.00 × 50%]

Diminished Future Credit = $1,226,080.65 – 866,501.00

Diminished Future Credit = $359,579.65

 Enfield argues that the City's potential future credit should be eliminated by the negative value of the diminished lien. The court agrees with Enfield's assessment. The primary purpose of a subrogation lien and future credit is to prevent employees who bring third-party actions from receiving a double recovery. *Maas*, 23 Kan.App.2d at 239, 929 P.2d 780. Enfield will not receive a double recovery if the future credit is offset by the negative diminished lien, and thus, the intent of the statute will not be thwarted. "Furthermore, workers compensation statutes should be liberally construed in favor of the worker if such construction is compatible with legislative intent." *Id.* (citing *Nordstrom v. City of Topeka*, 228 Kan. 336, 340, 613 P.2d 1371 (1980)).

### IV. Attorney Fees and Costs

Enfield claims if the court determines the City is entitled to a future credit, then it must require the City to pay a proportionate share of attorney fees and case expenses on such credit. The City contends that each party should pay their own costs and attorney fees. Because the court has determined that the City is not entitled to a future credit, it is unnecessary to assess attorney fees and costs.

### V. Conclusion

IT IS THEREFORE ORDERED this 26th day of October 1999, that Enfield's motion to enforce the surety's liability (dkt. no. 455) is denied as moot; the City's motion to enforce workers compensation lien (dkt. no. 461) is denied; and Enfield's motion to determine the City's diminished lien, credit against future workers compensation payment and proportionate share of attorney fees and expenses (dkt. no. 463) is granted as set forth above.