PUBLISH

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 17 2000**

**PATRICK FISHER**
**Clerk**

# UNITED STATES COURT OF APPEALS

# TENH CIRCUIT

JERRY ALLEN ENFIELD, by and
through his conservator and natural
mother, Mae Enfield,

     Plaintiff-Appellee,

     v.

A.B. CHANCE COMPANY, a
subsidiary of Emerson Electric
Company; EMERSON ELECTRIC CO.,

     Defendants,

and

THE CITY OF GOODLAND,
KANSAS,

     Intervenor-Appellant.

No. 99-3369

---

**Appeal from United States District Court**
**for the District of Kansas**
**(D.C. No. 94-CV-1423-JTM)**

---

Richard L. Friedeman, of Watkins, Calcara, Rondeau, Friedeman, Bleeker,
Glendenning & McVay, Chtd., Great Bend, Kansas, for the appellant.

David A. Hoffman (Donald W. Vasos with him on the brief), of Vasos Law
Offices, Fairway, Kansas, for the appellee.

Before **BRORBY**, **POLITZ,**[*] and **BRISCOE**, Circuit Judges.

**BRISCOE**, Circuit Judge

The City of Goodland, Kansas (the City), appeals the district court's order interpreting portions of the Kansas workers' compensation subrogation statute, Kan. Stat. Ann. § 44-504. When an employer pays workers' compensation benefits and/or medical aid to an injured employee, § 44-504(b) affords the employer a subrogation interest in amounts recovered by the employee from a third-party tortfeasor responsible for the employee's injuries. Section 44-504(b) also, under certain circumstances, affords the employer a credit against future payments of workers' compensation or medical aid. The subrogation interest and future credit are subject to reduction under § 44-504(d), however, if the employer is found to have contributed to the employee's injuries. At issue here is the proper method of calculating the reduction under § 44-504(d). Although our interpretation of § 44-504 differs significantly from that adopted by the district court, we agree with the court's result and affirm its judgment.

I.

Plaintiff-appellee Jerry Allen Enfield, an employee of the City, was

_____

[*] The Honorable Henry A. Politz, United States Court of Appeals for the Fifth Circuit, sitting by designation.

severely injured on the job in 1992 when a utility pole broke and fell on him while it was being removed from the ground. Since that time, Enfield has received workers' compensation benefits from the City's workers' compensation insurance carrier, Employers Mutual Insurance Company (EMIC). In September 1994, Enfield filed this products liability diversity action against defendant A.B. Chance (Chance), the manufacturer of the digger-derrick that was being used to remove the utility pole from the ground at the time of the accident. The City, represented by EMIC, intervened in order to monitor the proceedings. The case proceeded to trial and the jury found Chance and the City equally responsible for Enfield's injuries. The jury further found Enfield's total damages to be $3,466,004.00. The district court entered judgment against Chance and in favor of Enfield in the amount of $1,733,002.00 ($3,466,004.00 multiplied by Chance's 50% share of liability). Chance filed a direct appeal, and this court affirmed the district court's judgment. Enfield v. A.B. Chance Co., 182 F.3d 931, 1999 WL 191198 (10th Cir. 1999) (unpublished opinion). Chance subsequently tendered payment of the judgment, plus statutory interest, to Enfield.

Citing the provisions of Kan. Stat. Ann. § 44-504, EMIC and the City filed a motion to enforce workers' compensation lien. In their motion, EMIC and the City claimed they were entitled to a workers' compensation lien in the amount of $253,460.67 (approximately half of the workers' compensation benefits paid to

3

Enfield) against the amount recovered by Enfield from Chance. Enfield filed a response in opposition, as well as his own motion entitled "Plaintiff's Motion for Determination of Goodland's Diminished Lien, Credit Against Future Worker's Compensation Payments, and Proportionate Share of Attorney's Fees and Expenses." App. at 148. The district court simultaneously granted Enfield's motion and denied EMIC's and the City's motion. In doing so, the district court concluded that, due to the jury's determination that the City was 50% responsible for Enfield's injuries, the City's workers' compensation lien should be reduced to zero (in fact, as explained below, the court concluded the lien had a negative value) and the City should receive no credits against future payments of workers' compensation and medical aid.

## II.

All of the issues raised on appeal concern the district court's interpretation of Kan. Stat. Ann. § 44-504. We review those issues de novo. See Salve Regina College v. Russell, 499 U.S. 225, 239 (1991) (stating that "courts of appeals review the state-law determinations of district courts de novo"); Mount Olivet Cemetery Ass'n v. Salt Lake City, 164 F.3d 480, 485 (10th Cir. 1998) (same).

The City contends the district court erred in applying § 44-504, both with respect to the reduction of the City's subrogation interest and the determination of the City's right to credit against future payments of medical aid and workers'

4

compensation benefits. To properly understand the City's arguments, it is necessary to first review the language of the statute and the district court's analysis.

Three subsections of § 44-504 are relevant to this dispute. Subsection (a) affords an injured employee "the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against" any third-party (other than his employer or the employer's agents) who is responsible for the employee's injuries. Subsection (b) affords the employer a subrogation interest, as well as the right to potential credit against future compensation and medical aid, in the event the injured employee recovers from the third-party tortfeasor:

> In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse. The employer shall receive notice of the action, have a right to intervene and may participate in the action. The district court shall determine the extent of participation of the intervenor, including the apportionment of costs and fees. Whenever any judgment in any such action, settlement or recovery otherwise is recovered by the injured worker or the worker's dependents or personal representative prior to the completion of compensation or medical aid payments, the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of such judgment,

5

settlement or recovery otherwise shall be credited against future payments of the compensation or medical aid.

Kan. Stat. Ann. § 44-504(b). Subsection (d) provides for reduction of the employer's subrogation and future credit interests in the event the employer and/or its agents are partially responsible for the employee's injuries:

> If the negligence of the worker's employer or those for whom the employer is responsible, other than the injured worker, is found to have contributed to the party's injury, the employer's subrogation interest or credits against future payments of compensation and medical aid, as provided by this section, shall be diminished by the percentage of the recovery attributed to the negligence of the employer or those for whom the employer is responsible, other than the injured worker.

Kan. Stat. Ann. § 44-504(d).

The outcome of the parties' subrogation motions hinged on the interpretation of the following phrase contained in subsection (d): "the employer's subrogation interest or credits against future payments of compensation and medical aid . . . shall be diminished by the percentage of the recovery attributed to the negligence of the employer." The district court interpreted the term "recovery," as used in the above-quoted phrase, to mean the actual amount recovered by the employee from the third-party tortfeasor. The court then concluded that the proper "formula for determining the diminished lien is as follows: diminished lien = lien - [recovery x % of employer's fault]." App. at 277. Likewise, the district court concluded that the proper formula for

6

determining the employer's diminished future credit is as follows: "diminished future credit = future credit - [recovery x % of employer's fault]." Id. at 279.

The City takes issue with all of these conclusions. First, the City contends that the term "recovery" cannot refer to the actual amount recovered by the employee from the third-party tortfeasor because none of that amount is ever attributable to the negligence of the employer. Instead, the City contends, the term "recovery," as used in subsection (d), must refer to the amount of workers' compensation benefits and medical aid received by the employee from the employer. Second, the City contends that the formula for determining the diminished subrogation lien should be as follows: diminished lien = lien x % of employer's fault. Finally, the City contends that the formula for determining the diminished future credit should be as follows: diminished future credit = future credit x % of employer's fault. We address these arguments in order.

*Meaning of the term "recovery"*

In addressing the City's arguments on this point, we begin by examining the history of subsection (d). "Prior to 1982, [§] 44-504 did not provide for reduction of an employer's subrogation lien if the employer was found to be partially at fault for the employee's injuries, even though [Kan. Stat. Ann. §] 60-258a provided for comparative fault." Anderson v. National Carriers, Inc., 727 P.2d 899, 901 (Kan. 1986). Although the Kansas Supreme Court "recognized the

7

inequities in allowing a partially negligent employer to recover full subrogation in Negley v. Massey Ferguson, Inc., [625 P.2d 472] (1981)," it "refused to reduce the employer's lien since '[t]he extent and nature of the subrogation rights of an employer under the workmen's compensation statutes are matters for legislative determination.'" Anderson, 727 P.2d at 901 (quoting Negley, 625 P.2d at 476). The Kansas legislature responded swiftly to Negley, "amend[ing] [§] 44-504 effective July 1, 1982, by adding subsection (d)." Id. at 901.

As originally implemented in 1982, subsection (d) read as follows:

> If the negligence of the worker's employer or those for whom the employer is responsible, other than the injured worker, is found to have contributed to the party's injury, the employer's subrogation interest or credits against future payments of compensation and medical aid, as provided by this section, shall be diminished by the percentage of the damage award attributed to the negligence of the employer or those for whom the employee is responsible, other than the injured worker.

Kan. Stat. Ann. § 44-504(d) (1982) (emphasis added).

In 1991, in Brabander v. Western Co-op. Elec., 811 P.2d 1216 (Kan. 1991), the Kansas Supreme Court was asked to decide whether the original version of subsection (d) "require[d] the trial court to reduce an employer's workers compensation subrogation interest: (1) by the percentage of fault attributed to the employer by the factfinder; or (2) by the percentage of the damage award itself attributable to the employer's negligence." Id. at 1217. The Kansas Supreme Court concluded that subsection (d) clearly and unambiguously required the

8

diminution to be determined by multiplying the damage award by the employer's percentage of fault or negligence. Id. at 1219. In other words, the court determined the diminution formula to be as follows: diminished lien = lien - [damage award x % of employer's fault]. With respect to the alternative interpretation proposed by the employer in Brabander, the Kansas Supreme Court stated: "Had the legislature intended that the diminution was to be determined by applying the employer's percentage of fault or negligence to the subrogation interest itself, it could have so provided as it did in the provision in Kansas Automobile Injury Reparations Act," which provided that the insurer's "'right of subrogation shall be reduced by the percentage of negligence attributable to the injured person.'" Id. (quoting Kan. Stat. Ann. § 40-3113a(d)).

In July 1993, approximately two years after Brabander was issued, the Kansas legislature amended subsection (d) to read as it does today. The single change implemented by the amendment was to drop the term "damage award" and substitute the term "recovery." To date, neither the Kansas Supreme Court nor the Kansas Court of Appeals has had an opportunity to determine how, if at all, the 1993 amendment affected the diminution formula. See Maas v. Huxtable & Assocs., Inc., 929 P.2d 780, 785-86 (Kan. Ct. App. 1996) (affirming trial court's conclusion that § 44-504(d) applies to third-party actions that are settled; although the court noted that "[h]ow the legislature intended the employer's

9

percentage of negligence to be determined . . [wa]s not clearly stated in the statutory language," it was not called upon to decide the proper formula).

Turning now to the City's arguments, we agree that the district court erred in defining the term "recovery" as the amount actually recovered by the employee from the third-party tortfeasor. The actual amount recovered by an employee from a third-party tortfeasor, at least in a case where a jury has assessed damages and percentages of fault, will <u>never</u> include any amounts attributable to the negligence of the employer. An example will highlight this conclusion. Assume that an injured employee sues a third-party tortfeasor and, at trial, the jury concludes the employee has incurred a total of $500,000 in damages and that the third-party tortfeasor and the employer are equally responsible (each 50% negligent). The actual amount recovered by the employee from the third-party tortfeasor after trial will be $250,000 (the total damage award x the third-party's degree of fault). None of the $250,000 actually recovered from the third-party tortfeasor is attributable to the employer; rather, the employer is responsible for the remaining $250,000 damages assessed by the jury (although those damages are uncollectible under the Kansas Workers Compensation scheme).[1] The result is

---

[1] The district court failed to recognize this problem. Instead, it took the actual amount collected by Enfield from Chance and multiplied that by the percentage of fault allocated by the jury to the City. For the reasons explained above, however, none of the actual amount collected by Enfield from Chance is

(continued...)

10

that subsection (d) is effectively nullified since there is no diminishment of the employer's subrogation interest under subsection (d).[2]  See generally Walters v. Metropolitan Educ. Enterp., Inc., 519 U.S. 202, 209 (1997) ("Statutes must be interpreted, if possible, to give each word some operative effect."); Gustafson v. Alloyd Co., 513 U.S. 561, 574 (1995) (noting that Supreme Court will avoid interpretation of statute that "renders some words altogether redundant"); Kungys v. United States, 485 U.S. 759, 778 (1988) (noting the "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant"); Mountain States Tel. Co. v. Pueblo of Santa Ana, 472 U.S. 237, 249 (1985) (noting "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.") (internal quotations omitted).

We conclude there is an additional problem with the district court's definition of the term "recovery."  The term "recovery" is used throughout § 44-504, most notably in subsection (b).  For example, subsection (b) provides, in part, as follows:

> Whenever any judgment in any such action, settlement or recovery otherwise is recovered by the injured worker or the worker's dependents or personal representative prior to the completion of

---

[1](...continued)
allocable to the negligence of the City or its employees.

[2]  The same would hold true in cases in which the third-party tortfeasor settles with the employee, unless the settling parties agree that the settlement amount includes amounts attributable to the employer's negligence.

11

compensation or medical aid payments, the amount of such judgment, settlement or <u>recovery</u> otherwise actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of <u>recovery</u> of such judgment, settlement or <u>recovery</u> otherwise shall be credited against future payments of the compensation or medical aid.

Kan. Stat. Ann. § 44-504(b) (emphasis added). As this example indicates, the term "recovery" has two different meanings, depending upon how it is used in the statute. As used in the first, second, and fourth instances in the above-quoted sentence, the term refers generally to a "vindication of rights" by way of money damages.[3] In the third instance (i.e., "date of recovery"), it refers to the time when the amount of money is collected. In none of these instances, however, does the term refer to the amount of money or damages actually collected by the employee from the third-party tortfeasor.[4] Adopting the district court's interpretation would thus result in the term "recovery" having one meaning for purposes of subsection (d), and a separate meaning (or meanings) for purposes of the remainder of the statute. <u>See</u> <u>generally</u> <u>Estate of Cowart v. Nicklos Drilling</u>

---

[3] Black's Law Dictionary defines the term "recovery" as "the restoration or vindication of a right existing in a person, by the formal judgment or decree of a competent court," and "[t]he amount finally collected, or the amount of judgment." Black's Law Dictionary 1276 (6th ed. 1990).

[4] Indeed, employment of the district court's definition of the term "recovery" in subsection (b) would render some of its language redundant. For example, subsection (b) would effectively read "the amount of such recovery [i.e., the amount actually collected from the third-party tortfeasor] otherwise actually paid and recovered."

12

Co., 505 U.S. 469, 479 (1992) (noting the "basic canon of statutory construction that identical terms within an Act bear the same meaning"); Martin v. Board of County Comm'rs, 848 P.2d 1000, 1006-07 (Kan. Ct. App. 1993) (interpreting statutory phrase so that it has "the same meaning each time it appears"); Central State Bank v. Albright, 737 P.2d 65, 68 (Kan. Ct. App. 1987) ("It is a well recognized rule of statutory construction used to determine legislative intent that ordinarily identical words or terms used in different statutes on a specific subject are interpreted to have the same meaning in the absence of anything in the context to indicate that a different meaning was intended.").

The City's proposed alternative definition of the term "recovery" is just as problematic. The City argues that the term "recovery," as used in § 44-504(d), should be interpreted to mean "the workers' compensation recovery." Aplt's Opening Brief at 15. Accepting the City's argument, however, would mean that the term "recovery" would have one meaning for purposes of subsection (d) and another meaning (or meanings) for purposes of subsection (b). As with the district court's interpretation, this is clearly contrary to all accepted rules of statutory construction. See, e.g., Estate of Cowart, 505 U.S. at 479 (noting the "basic canon of statutory construction that identical terms within an Act bear the same meaning"). Further, the City's proposed definition makes no sense even if applied solely in the context of subsection (d). Under the Kansas workers'

13

compensation scheme, an employer's responsibility to provide an injured worker with medical aid and compensation benefits is not tied to the employer's negligence in causing the injury. Thus, applying the City's proposed definition of the term "recovery," there would never be a diminishment in the employer's subrogation interest because none of the workers' compensation payments made by the employer would be "attribut[able] to the negligence of the employer" or its agents as required by subsection (d). As with the district court's proposed definition, the City's proposed definition would effectively render the envisioned diminishment under subsection (d) a nullity.

The question is therefore how to interpret the term "recovery" as used in subsection (d) to avoid these problems. Although the City could perhaps argue that in a case such as this the term should refer only to the judgment entered by the trial court, we conclude that would be inappropriate because the statute specifically employs the term "judgment" in other portions of § 44-504. In other words, had the Kansas legislature intended the term "recovery," as used in subsection (d), to refer to a judgment, it presumably would have said so. In our view, the only workable solution is to adopt the broad definition of "recovery" that is employed, with the one exception noted above, throughout subsection (b) of the statute, i.e., a vindication of rights by way of money damages. In a case such as this that proceeds to a jury verdict, the term would encompass the total

14

damage figure decided by the jury (and the result would be the same as if the pre-1993 version of subsection (d) had been applied). In cases involving settlements, it would encompass the total amount of the settlement.

In adopting this broad interpretation, we reject the City's assertion that such an interpretation is contrary to the purpose of the 1993 amendment to subsection (d). According to the City, the 1993 amendment to subsection (d) was implemented by the Kansas legislature in response to the Brabander opinion and "in a manner to benefit the employer." City's Opening Brief at 9. Importantly, however, there is little, if any, support for the City's arguments. There is no legislative history to which we can refer, and the timing of the amendment (i.e., two years after Brabander) is less than persuasive authority for the notion that the legislature intended the amendment as a response to Brabander. In our view, it is likely the term "recovery" was utilized by the legislature to signal that the lien reduction would apply whenever there is a vindication of legal rights by way of money damages, regardless of whether that vindication occurs in the context of a trial (and a damage award) or a settlement (and a settlement amount). This interpretation is consistent with the decision in Maas, which specifically held that subsection (d), as amended in 1993, applies to third-party actions that are settled. 929 P.2d at 786.

*Proper formula for reducing subrogation interest*

15

Our next task is to determine the proper formula for reducing the amount of the employer's subrogation interest under subsection (d). More specifically, the question is whether subsection (d) provides for reducing the amount of the subrogation interest by multiplying it directly against the percentage of fault allocated to the employer (subrogation interest x employer's percentage of fault), or by subtracting from the subrogation interest the product of the "recovery" multiplied by the percentage of fault allocated to the employer (subrogation interest - [recovery x employer's percentage of fault]).

We conclude the latter formula is the proper one. Had the Kansas legislature intended the formula urged by the City, it could easily have said so in subsection (d) (e.g., by stating the employer's subrogation interest shall be diminished by the percentage of fault allocated to the employer or those for whom the employer is responsible). Instead, it chose to use the phrase "diminished by the percentage of the recovery attributed to the negligence of the employer or those for whom the employer is responsible." Given this choice of language, we have little doubt the legislature intended that the employer's subrogation interest be reduced by the product of the "recovery" multiplied by the percentage of fault allocated to the employer. As the following example demonstrates, this formula produces more rational results than the formula proposed by the City:

> Example 1: Injured worker sues third-party tortfeasor and prevails at trial. Jury finds third party and employer equally responsible for

16

worker's injuries (50% and 50%).  Jury finds worker's total damages are $500,000.  At the time of trial the employer has paid the worker $250,000 in medical aid and workers' compensation benefits.

Proper formula:
diminished lien  = lien - (damage award x % of employer's
                              negligence)
                 = $250,000 - ($500,000 x 50%)
                 = $250,000 - $250,000
                 = $0

City's proposed formula:
diminished lien  = lien x % of employer's negligence
                 = $250,000 x 50%
                 = $125,000

Under our formula, the injured worker would ultimately collect $500,000, an amount equivalent to the total damages assessed by the jury at trial.  The worker would be made whole, without any double recovery, and both the third party and the employer would pay amounts equal to the amounts of liability assessed by the jury at trial.  In contrast, under the City's proposed formula, the injured worker would receive a total of $375,000 in money, medical aid, and benefits from both the third party and the employer.  The employer would benefit at the worker's expense by receiving a $125,000 subrogation lien against the $250,000 collected from the third party (and effectively reducing that amount to $125,000).

*Proper formula for reducing future credits*

For the same reasons, we conclude the proper formula for reducing an employer's future credits under subsection (d) is as follows:

17

diminished future credits = future credits - (damage award x % of employer's negligence)

Again, an example will help clarify why this formula, as opposed to the City's proposed formula, is more consistent with the language of subsection (d):

> Example 2: Same facts as Example 1, except that the employer has paid only $100,000 in medical aid and workers' compensation benefits to the worker at the time of trial. Under subsection (b), the actual amount recovered by the worker from the third party would exceed the amount of medical aid and workers' compensation benefits by $150,000. Thus, subsection (b) would afford the employer a credit in that amount against future payments of medical aid and workers' compensation benefits. However, because the employer was found to be at fault in causing the worker's injuries, subsection (d) would require the amount of future credits to be reduced.
>
> Proper formula:
> diminished future credits = credits - (damage award x % of employer's negligence)
> = $150,000 - ($500,000 x 50%)
> = $150,000 - $250,000
> = ($100,000)
>
> City's proposed formula:
> diminished future credits = credits x % of employer's negligence
> = $150,000 x 50%
> = $75,000

Under the formula we adopt today, the employer's future credits would effectively be diminished to zero (although it is actually a negative figure), and the employer would receive no credits against future medical aid or compensation payments it might make to the worker. The result is that the injured worker

18

would be allowed to collect the full amount of damages assessed by the jury. In contrast, under the City's proposed formula, the employer would receive a credit of $75,000 against future medical aid or workers' compensation payments. Assuming the worker becomes entitled to an additional $150,000 in medical aid and workers' compensation benefits (the jury's prediction of the worker's total damages), the injured worker would receive only an additional $75,000 from the employer. The worker would receive a total of $425,000 in money and benefits from the third party and the employer ($250,000 from the third party and $175,000 from the employer), and would not be made whole. Further, the employer would never pay the full amount determined by the jury. In short, the employer would benefit at the expense of the worker.

Having outlined what we believe to be the proper formula under subsection (d) for reducing an employer's future credit, we note that this formula is not perfect. In some instances, particularly where the employer's percentage of fault is relatively low, the employer will receive a future credit even though the employer has not paid an amount equal to or greater than the amount of liability assessed to it by the jury. An example will demonstrate this point:

> Example 3: Assume the injured worker sues the third-party tortfeasor and, at trial, the jury finds the worker's total damages to be $1,000,000, and assesses 80% liability to the third-party and 20% liability to the employer. Further assume that at the time of trial, the employer has paid $100,000 in compensation benefits to the worker. Although the employer would not receive a subrogation lien against

19

the amount paid by the third-party (i.e., $800,000), the employer would receive a credit against future compensation payments.

Diminished future credit = $700,000[5] - ($1,000,000 x 20%)
= $700,000 - $200,000
= $500,000

*Application of proper formulas*

Applying the above-outlined formulas to the facts of this case produces the following results:

Diminished lien = $506,921.35 - ($3,466,004 x 50%)
= $506,921.35 - $1,733,002
= ($1,226,080.65)

Diminished Future Credit = $1,226,080.65 - ($3,466,004 x 50%)
= $1,226,080.65 - $1,733,002
= ($506,921.35)

The City has no subrogation lien and receives no future credit. Although it applied a different method of computation, this is the same result reached by the district court.

*Simultaneous reduction of employer's subrogation interest and its credits against future compensation*

The City next contends the district court erred in reducing both its subrogation interest and its credits against future compensation. In support of its

_____

[5] This figure, the future credit allowed for under subsection (b), is derived by taking the amount received from the third party ($800,000) and subtracting the amount of compensation benefits paid by the employer ($100,000).

contention, the City points to the following language in subsection (d): "the employer's subrogation interest or credits against future payments of compensation and medical aid . . . shall be diminished."  According to the City, use of the term "or" rather than the term "and" in the subsection indicates that the diminishment must occur either to the subrogation interest or the future credits, but not both.

The City did not raise this argument before the district court.  Instead, the City conceded in its district court pleadings that both its subrogation lien and its future credits should be diminished under subsection (d).  See, e.g., App. at 82 (arguing the City's future credits should be diminished in a manner similar to the City's subrogation lien).  For this reason, we find it unnecessary to reach the merits of the issue now raised by the City.  See Tele-Communications, Inc. v. Commissioner, 104 F.3d 1229, 1232 (10th Cir. 1997) (noting that "[g]enerally, an appellate court will not consider an issue raised for the first time on appeal").  Instead, we will assume, as argued by the City to the district court and as concluded by the district court, that both the subrogation lien and the future credits can be diminished.

*Combining values obtained from diminished lien and diminished future credit formulas*

When it disposed of the parties' motions, the district court applied what it believed to be the proper formulas under subsection (d) for determining the City's

21

diminished lien and the City's diminished future credit. In particular, the district

court computed the City's diminished lien in the following manner:

Diminished Lien = Lien - [Recovery - % of Employer's Fault]
= $506,921.35 - [$1,733,002.00 x 50%]
= $506,921.35 - $866,501.00
= ($359,579.65)

App. at 278. The district court then computed the City's diminished future credit

in the following manner:

Diminished Future Credit = $1,226,080.65 - [$1,733,002.00 x 50%]
= $1,226,080.65 - 866,501.00
= $359,579.65

Id. at 279. At Enfield's urging, the district court combined the two values and

essentially eliminated the City's future credit "by the negative value of the

diminished lien." Id. According to the district court, this final calculation was

proper because (1) it did not thwart the intent of the statute, i.e., prevent a worker

from receiving a double recovery, and (2) it was consistent with the notion that

"'workers compensation statutes should be liberally construed in favor of the

worker if such construction is compatible with legislative intent.'" Id. at 279-80

(quoting Maas, 929 P.2d at 784).

In its final argument on appeal, the City contends the district court erred in

combining the values it obtained from using the diminished lien and diminished

future credit formulas. According to the City, this combining of values is not

22

anticipated or allowed by the language of the statute.

We agree with the City. Reading the language of subsection (d), there is no indication that the Kansas legislature intended that the values resulting from the diminished lien and diminished future credit calculations would be combined, or that one could be carried over to the other. Further, although carrying over one value to another might produce a more "just" result in some circumstances, that is not always the case. The problem is that, although the formula for computing the diminished lien produces equitable results in all circumstances, the formula for computing the diminished future credit is imperfect. That, however, is a problem to be addressed by the Kansas legislature and not by allowing values from one formula to be carried over to another.

*City's motion to certify*

The City has filed a motion to certify to the Kansas Supreme Court each of the issues it has raised on appeal. Tenth Circuit Rule 27.1(A) governs certification of questions of state law and provides that "[w]hen state law permits, this court may: (1) certify a question arising under state law to that state's highest court according to that court's rules; and (2) stay the case in this court to await the state court's decision of the certified question." 10th Cir. R. 27.1(A). Kansas state law permits the Kansas Supreme Court to answer questions of law certified to it by

23

> a court of appeals of the United States [or] a United States district court . . . , when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

Kan. Stat. Ann. § 60-3201.

While certification is appropriate "where the legal question at issue is novel and the applicable state law is unsettled," Allstate Ins. Co. v. Brown, 920 F.2d 664, 667 (10th Cir. 1990), it is never compelled. See Lehman Brothers v. Schein, 416 U.S. 386, 390-91 (1974). "[U]nder the diversity statutes the federal courts have the duty to decide questions of state law even if difficult or uncertain." Copier v. Smith & Wesson Corp., 138 F.3d 833, 838 (10th Cir. 1998) (citing Meredith v. Winter Haven, 320 U.S. 228, 235 (1943)). We "generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court." Massengale v. Oklahoma Bd. of Med. Exam'rs in Optometry, 30 F.3d 1325, 1331 (10th Cir. 1994).

Applying these general principles to the circumstances presented here, we deny the City's motion for certification. Although the issues raised by the City are novel and somewhat difficult, the City did not seek certification until after it received an adverse decision from the district court. That fact alone persuades us

24

that certification is inappropriate.

III.

The City of Goodland's motion for certification of questions of state law is DENIED. Enfield's motion for a finding that this appeal is frivolous and for an award of damages and costs is DENIED. The judgment of the district court is AFFIRMED.