IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,379

HUGH MICHAEL HAWKINS,
*Appellant/Cross-appellee*,

v.

SOUTHWEST KANSAS CO-OP SERVICE and TRAVELERS INDEMNITY COMPANY,
*Appellees/Cross-appellants.*

SYLLABUS BY THE COURT

1.

The nature and extent of an employer's subrogation rights under the Workers Compensation Act are matters for legislative determination.

2.

The intent of K.S.A. 44-504(b) is two-fold: (a) to preserve an injured worker's claim against a third-party tortfeasor and (b) to prevent double recoveries by an injured worker.

3.

K.S.A. 44-504(d) expresses a legislative intent to reduce an employer's subrogation interest in an injured worker's recoveries from third-party tortfeasors if the negligence of the employer or those for whom the employer is responsible, other than the injured worker, is found to have contributed to the worker's injuries.

4.

A jury's fault finding against an employer in a comparative negligence case can supply substantial competent evidence of the employer's percentage of fault for reducing an employer's subrogation interest under K.S.A. 44-504(d).

1

5.

A jury's determination of the actual damages suffered by an injured worker in a claim authorized by K.S.A. 44-504(b) against a third party does not bear on the reduction of an employer's subrogation interest under K.S.A. 44-504(d) in settlement proceeds received from other third parties.

Review of the judgment of the Court of Appeals in 58 Kan. App. 2d 38, 464 P.3d 14 (2020). Appeal from the Workers Compensation Board. Opinion filed April 2, 2021. Judgment of the Court of Appeals reversing the Workers Compensation Board and remanding the case with directions is affirmed in part and reversed in part. Decision of the Workers Compensation Board is affirmed.

*Scott J. Mann*, of Mann, Wyatt & Rice, L.L.C., of Hutchinson, argued the cause and was on the briefs for appellant/cross-appellee.

*William L. Townsley III*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause and was on the briefs for appellees/cross-appellants.

*Vera S. Swinnerton*, of Monaco, Sanders, Racine, & Powell, L.L.C., of Leawood, and *Ryan L. Woody*, pro hac vice, and *Jacob A. Simon*, pro hac vice, of Matthiesen, Wickert & Lehrer, S.C., of Hartford, Wisconsin, were on the brief for amicus curiae National Association of Subrogation Professionals.

The opinion of the court was delivered by

BILES, J.: Hugh M. Hawkins suffered a catastrophic workplace injury and receives workers compensation benefits from his employer, Southwest Kansas Co-op Service and its insurance carrier, Travelers Indemnity Co. Hawkins also pursued civil lawsuits against three other entities he claimed had responsibility for some or all of his injuries and settled with two. Southwest and Travelers now want to be repaid from one of those settlements. See K.S.A. 44-504(b) (providing a lien against third-party recoveries for workers

2

compensation benefits). Everyone agrees there is an employer's subrogation interest in the $1.5 million settlement at issue. The dispute lies over how much that interest is because state law reduces it when an employer's negligence is found to have contributed to the employee's workplace injury. See K.S.A. 44-504(d). A jury verdict involving the non-settling third-party, which occurred after the settlement, further complicates matters. That jury found Southwest 25% at fault and assessed Hawkins' damages at more than $4 million.

A divided Workers Compensation Board reduced the subrogation interest for Southwest's past and future expenses by 25% of the $1.5 million settlement. A Court of Appeals panel agreed there should be a reduction but by a much larger amount: 25% of the jury's $4 million damage award. *Hawkins v. Southwest Kansas Co-op Service*, 58 Kan. App. 2d 38, 51, 464 P.3d 14 (2020). Unhappy with that result, Southwest and Travelers challenge the panel's decision.

We must decide how the statutorily required reduction operates under the circumstances of this case. The questions are: (1) whether the jury's fault determination occurring after the $1.5 million settlement can be used to reduce the employer's subrogation interest or credits when that settlement did not allocate fault; (2) how to calculate any subrogation interest reduction based on our answer to the first question; and (3) how to implement any subrogation interest reduction for future benefits payments against the remaining settlement installments.

We hold the Board majority correctly determined the calculations, although we fully appreciate the substantive disagreements this confounding statutory scheme generates for those trying to discern its meaning. The Court of Appeals judgment is affirmed in part and reversed in part.

3

Hawkins sustained severe injuries in a 2006 workplace accident while employed as a millwright. He fell from a "man-basket" suspended about 65 feet in the air when the hydraulics failed on a boom crane. He claimed workers compensation benefits. Southwest and Travelers agreed to pay permanent total disability benefits and a continuing award for future medical care.

*The tort litigation*

Hawkins also pursued civil lawsuits against three entities: JLG Industries, Inc., the crane's manufacturer; Western Steel and Automation, Inc., which bought the crane in 1997 and owned it at the time of the accident; and United Rentals Northwest, which sold Western Steel the crane and inspected its equipment in 1999. See *Hawkins v. United Rentals Northwest, Inc.*, No. 109,664, 2014 WL 5346255, at *1 (Kan. App. 2014) (unpublished opinion). Hawkins settled with Western Steel and JLG before trial.

The Western Steel settlement paid $925,000 and designated the full amount as damages for loss of consortium and loss of services of a spouse. The parties agree Southwest has no subrogation rights in this money. See K.S.A. 44-504(b) (subrogation lien excludes recovery for loss of consortium or services to a spouse).

The district court approved a more complicated settlement with JLG and its successor in interest, Manitex, L.L.C. It had alternate payment structures, depending on separate litigation over insurance coverage. If the coverage litigation succeeded, JLG and Manitex would pay a $5.5 million lump sum. But if that litigation failed, they would pay $1.5 million in 20 annual installments of $75,000. The court found that "based on the evidence, Hugh M. Hawkins, his spouse . . . , [his conservator], and Southwest . . . have

4

suffered economic and non-economic damages in excess of $6,300,000." The court did not apportion fault when approving the settlement. The coverage litigation failed, so the $75,000 payments began on May 2, 2012.

The United Rentals claim ended in a 2011 jury trial, after the JLG settlement approval. The jury found Hawkins suffered $4,081,916.50 in damages, consisting of $1,580,476.50 in past and future economic and non-economic losses; and "damages . . . sustained by plaintiff, Southwest" of $2,501,440 for past and future medical expenses for Hawkins. The jury found Western Steel 75% at fault and attributed the remaining 25% to Southwest. But this verdict did not result in more money for Hawkins because Western Steel had settled before trial, so its liability remained fixed, and the Workers Compensation Act shielded Southwest from additional civil liability. See K.S.A. 2019 Supp. 44-501b(d) (if an injured worker could have recovered compensation for an injury under the Act, the worker cannot bring an action against the employer or another employee for damages based on common-law negligence).

*The administrative proceedings over subrogation*

In 2016, Southwest and Travelers sought a determination from the Workers Compensation Board of their statutory subrogation rights against the JLG settlement. See K.S.A. 44-504 (establishing lien and future credit to employer for past and future workers compensation payments if employee recovers from third party for the injury). The parties stipulated Travelers had paid $852,460.34 up to that time in medical and permanent total disability benefits.

The dispute focused on K.S.A. 44-504's proper application. Subsection (b) provides for an employer's lien to "the extent of the compensation and medical aid provided by the employer to the date of" a recovery from a third party. It also provides

5

that when compensation and medical aid payments are continuing, the employer is entitled to a future credit for amounts "actually paid and recovered" that exceed the compensation and medical payments made to the date of recovery. K.S.A. 44-504(b). And subsection (d) requires the employer's subrogation interest or credits against future payments "shall be diminished by the percentage of the recovery attributed to the negligence of the employer or those for whom the employer is responsible, other than the injured worker."

Southwest argued against any reduction of its lien and credits despite the 25% fault assigned to it by the *United Rentals* jury. It claimed the settlement proceeds were not recovered "in accordance with the findings of the jury," and were "independent of the jury findings apportioning fault." It also contended its lien in the JLG settlement arose automatically by law before the *United Rentals* verdict, creating an immediately vested subrogation right to the entire $1.5 million settlement. Southwest asked that "all future [JLG] payments . . . be directed to Travelers until its subrogation lien and credits have been satisfied."

Hawkins countered that Southwest's $852,460.34 lien to date should be reduced to $0 based on the jury's comparative negligence verdict and damages award. He claimed Southwest could not recoup anything until its workers compensation payments exceeded 25% of the $4,081,916.50 in damages the jury attributed to Southwest, i.e. $1,020,479.

The administrative law judge ruled the jury's damage award was "moot," apparently because there was no additional compensation to Hawkins since he had "settled claims against [two] of the parties [whose] percentage of fault was determined." Then, using only the $1.5 million JLG settlement, the ALJ concluded Travelers and Southwest had a $477,460.34 lien and $272,539.66 future credit from the JLG installments. To arrive at the lien amount, the ALJ deducted 25% of $1.5 million from

6

Southwest's $852,460.34 payments to date. And to calculate the future credit, the ALJ deducted 25% of $1.5 million from the difference between the settlement amount and Southwest's payments to date. The ALJ explained her calculation this way:

> "The United States Court of Appeals in *Enfield* [*v. A.B. Chance Co.*, 228 F.3d 1245 (10th Cir. 2000)] interpreted K.S.A. 44-504(d) and set forth the formula that was to be used to find [Southwest's] lien. We have to use actual damages agreed to that was not designated as loss of services to a spouse or loss of consortium. $852,460.34 (lien)-$1,500,000. (damage award) X 25% (negligence) or $375,000.00 = $477,460.34. [Southwest] is entitled to a lien in the sum of $477,460.34. The [*Enfield*] Court also provided a formula for future credits. $1,500,000. (recovery)- $852,460.34 (amount paid) =$647,539.66 (credits)-$1,500,000. (damage award) x 25% (negligence) or $375,000. = $272,539.66 which is the amount of future credit [Southwest] would have."

Both sides disagreed with this outcome and sought review from the Workers Compensation Board. It reached a split decision.

A majority agreed with the ALJ, ruling the lien and reduction should be calculated using the $1.5 million JLG settlement and the jury's 25% fault determination. It noted Hawkins has "no legitimate expectation" of recovering the jury's higher damages award, and concluded K.S.A. 44-504 and its attendant caselaw consider "a settlement to be a legitimate definition for the 'recovery' realized by the claimant," referring to K.S.A. 44-504(d). The majority found "it significant that claimant recovered nothing additional as the result of the jury verdict." And it concluded the *United Rentals* jury's fault determination against Southwest should be used to calculate the lien and future credit reductions because "[t]he determination by the jury of [Southwest's] fault is uncontradicted in [the] record." It explained,

7

"The majority sees no discrepancy in adopting and enforcing the jury's determination that [Southwest] was 25% at fault, while also finding [Hawkins'] recovery was for $1.5 million. The jury's 25% fault determination and the jury's finding of over $3.9 million in damages can be compartmentalized. The figures are not dependent upon each other. Here, the Board is honoring the jury's determination of fault, while finding the . . . jury verdict is not a recovery. Such amount will never be recovered, and as noted, [Hawkins'] actual recovery is $1.5 million. There is no rule or logic requiring the Board to accept all of the jury's determinations or to reject all of the jury's determinations in total."

One Board member concurred in part and dissented in part, preferring to use the $1.5 million settlement with 0% fault attributed to Southwest because no fault allocation was stated in the settlement agreement. The dissenting member would have used both the jury's 25% fault determination and its $4,081,916.50 damage award because "the 'recovery' [is] the damage amount determined by the jury, and not the actual amount received by [Hawkins] of $1.5 million." Both Hawkins and Southwest appealed.

*The Court of Appeals decision*

A Court of Appeals panel reversed and remanded the case to the Board with instructions to impose a different calculation. *Hawkins*, 58 Kan. App. 2d at 57. The panel agreed the jury's 25% fault determination should control subrogation reduction and future credits, harboring "no doubt that a jury rendering a verdict fixing the employer's fault along with the named defendants and other phantom defendants in an employee's third-party action fits the legislative design," despite "something less than crystal clear" statutory guidance. 58 Kan. App. 2d at 48-49.

But the panel agreed with the Board's dissenting member that the subrogation interest reduction and future credit should be calculated by using the 25% fault against the jury's $4,081,916.50 damage award. 58 Kan. App. 2d at 50-51. In its view, when a

8

jury determines fault and damages, using both findings to adjust an employer's lien is consistent with caselaw; "aligns with the liability the employer would have faced in the employee's civil action but for the workers compensation bar"; and serves the subrogation reduction clause's purpose of avoiding "undeserved financial break[s]" for negligent employers, "especially compared to those employers that pay benefits to injured employees and bear no legal fault for the injuries." 58 Kan. App. 2d at 50.

The panel held Southwest's subrogation interest for benefits already paid was $0. It also held that by subtracting 25% of the jury's damage award from the amounts Southwest already paid left a $168,018.80 deficit. 58 Kan. App. 2d at 51. Then, for Southwest's future credit, the panel held Southwest would have to pay workers compensation benefits calculated from May 5, 2011, equal to that deficit before gaining any offset from the JLG installments. 58 Kan. App. 2d at 51. And after making up the deficit, "Southwest Kansas Co-op could claim a credit to the extent a given $75,000 [annual] payment to Hawkins exceeded the additional benefits the company had paid him as of the date he received that payment." 58 Kan. App. 2d at 52.

The panel remanded the case to the Board with directions to re-calculate the future credits, further providing that in doing so

> "the Board should consider each annual payment to Hawkins under the JLG settlement as a recovery actually paid and calculate any credit based on the workers compensation benefits Southwest Kansas Co-op had provided through the date of the JLG payment, once those settlement payments less the benefits paid exceeded the lien deficit. The Board, in its discretion, may reopen the record, with or without a remand to the administrative law judge, to determine the value of the credit through the most recent settlement payment from JLG to Hawkins." 58 Kan. App. 2d at 57.

9

Southwest and Travelers asked this court for review, which we granted. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

Southwest and Travelers challenge three distinct aspects of the panel's decision: (1) using the *United Rentals* jury's 25% fault determination to calculate the lien and future credit reduction; (2) using the *United Rentals* jury's $4,081,916.50 damage determination to calculate the reduction; and (3) the panel's method for allocating the reductions against Southwest's past and future payments from the annual JLG settlement installments.

*Standard of review*

A court reviews the validity of the Board's decisions under the Kansas Judicial Review Act, K.S.A. 77-601 et seq. K.S.A. 2019 Supp. 44-556(a). The Act imposes the burden of proving invalidity on the party challenging the decision. K.S.A. 77-621(a)(1). *Woessner v. Labor Max Staffing*, 312 Kan. 36, 42, 471 P.3d 1 (2020). Relief may be granted only for statutorily enumerated reasons. Two are relevant here: the agency erroneously interpreted or applied the law; and the agency action was based on a factual determination not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole. K.S.A. 77-621(c)(4), (7).

This appeal turns on K.S.A. 44-504's meaning. Interpreting a statute is a question of law subject to de novo review. *Johnson v. U.S. Food Serv.*, 312 Kan. 597, 600, 478 P.3d 776 (2021).

"The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, [a court] begin[s] with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. But if a statute's language is ambiguous, [the court] will consult [its] canons of construction to resolve the ambiguity. [Citations omitted.]" *Johnson*, 312 Kan. at 600-01.

*Discussion*

The nature and extent of an employer's subrogation rights under the workers compensation statutes are matters for legislative determination. *McGranahan v. McGough*, 249 Kan. 328, Syl. ¶ 2, 820 P.2d 403 (1991). The subrogation statute provides in relevant parts:

"(a) When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person.

"(b) In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse. The employer shall receive notice of the action, have a right to intervene and may

11

participate in the action. The district court shall determine the extent of participation of the intervenor, including the apportionment of costs and fees. Whenever any judgment in any such action, settlement or recovery otherwise is recovered by the injured worker or the worker's dependents or personal representative prior to the completion of compensation or medical aid payments, the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of the compensation or medical aid. . . .

. . . .

"(d) If the negligence of the worker's employer or those for whom the employer is responsible, other than the injured worker, is found to have contributed to the party's injury, the employer's subrogation interest or credits against future payments of compensation and medical aid, as provided by this section, shall be diminished by the percentage of the recovery attributed to the negligence of the employer or those for whom the employer is responsible, other than the injured worker." K.S.A. 44-504.

K.S.A. 44-504(b)'s intent is two-fold: (1) to preserve injured workers claims against third-party tortfeasors and (2) to prevent double recoveries by injured workers. *Loucks v. Gallagher Woodsmall, Inc.*, 272 Kan. 710, Syl. ¶ 2, 35 P.3d 782 (2001); see *McGranahan*, 249 Kan. at 334.

The lien reduction provision in subsection (d) was added in 1982. "The language of 44-504(d) clearly expresses a legislative intent that an employer's subrogation lien should be reduced based upon the percentage of negligence attributed to the employer. *How the legislature intended the employer's percentage of negligence to be determined, however, is not clearly stated in the statutory language*." (Emphasis added.) *Maas v. Huxtable & Assocs., Inc.*, 23 Kan. App. 2d 236, 242, 929 P.2d 780 (1996). That interpretative quandary is the first difference of opinion among Hawkins, his employer,

12

the Board members, and the panel: whether any subrogation interest reduction is required under K.S.A. 44-504.

### *(1) Reducing the subrogation interest by the employer's negligence*

Southwest argues the jury's 25% fault determination cannot be used to reduce its lien and future credit. It contends any fault allocation must be based only on contemporaneous determinations about fault in the settlement agreement itself, which did not occur in this instance. We disagree this bars use of a jury's later fault finding under K.S.A. 44-504(d).

The Board majority properly applied the 25% fault determination because the statute requires a reduction when the employer's fault is found to contribute to the injury and a jury's finding of fault can provide substantial competence evidence for that reduction under appropriate circumstances. And in this case, the jury's finding supplies substantial competent evidence of Southwest's fault for use in the administrative proceedings to determine the nature and extent of its subrogation interest. K.S.A. 44-504(d) mandates reduction of the lien or future credits "if the negligence of the worker's employer . . . *is found to have contributed to the party's injury*." (Emphasis added.) See *Maas*, 23 Kan. App. 2d at 242.

There is no factual dispute that a fault determination occurred with the jury's verdict, so the Board reasonably could consider it. K.S.A. 44-504(d) does not specify who must make the fault finding, when it must be made, or how to determine the "percentage of the recovery attributed to" the employer's negligence. And the caselaw shows a jury's fault allocation may provide an adequate basis for calculating an employer's lien reduction. See, e.g., *Brabander v. Western Co-op. Electric*, 248 Kan. 914, 915, 811 P.2d 1216 (1991); *Enfield v. A.B. Chance Co.*, 228 F.3d 1245, 1248 (10th Cir.

13

2000). In both cases, juries awarded damages and the jury's fault determinations were used as the appropriate measure for reducing the employer's lien.

Southwest points out "'subrogation and creation of a lien occurs automatically under K.S.A. 44-504(b),'" in arguing a fault finding must be contemporaneous with a settlement agreement, citing *Smith v. Russell*, 274 Kan. 1076, 1086, 58 P.3d 698 (2002), and quoting *Ballard v. Dondlinger & Sons Const. Co.*, 51 Kan. App. 2d 855, 868, 355 P.3d 707 (2015). But this is unpersuasive—if not circular—because the same statute simultaneously requires reduction when the employer is found to have contributed to the employee's injuries. And neither *Smith* nor *Ballard* applied the mechanics of K.S.A. 44-504(d) in the way Southwest suggests. See *Smith*, 274 Kan. at 1086 (addressing whether the district court erred by denying the insurer's attempt to intervene several months after a settlement that allocated all proceeds to damages beyond the scope of the employer's statutory lien); *Ballard*, 51 Kan. App. 2d at 868 (holding employee not entitled to exempt settlement from lien by arguing proceeds were damages for loss of consortium because the court did not make that determination and the record contained no evidence supporting a consortium claim).

Joined by amicus National Association of Subrogation Professionals, Southwest also argues the caselaw applying K.S.A. 44-504 appears to contemplate a contemporaneous fault determination with a settlement. But that caselaw is sparse, and what there is only establishes the settling parties' fault allocation may control lien reduction. None impose a contemporaneous fault determination as a prerequisite for lien reduction. *Maas v. Huxtable & Assocs., Inc.*, 23 Kan. App. 2d 236, 242, 929 P.2d 780 (1996), for example, held that an employer's fault stipulation in settlement agreement was binding for purposes of subrogation reduction because it was approved by the district court after a hearing with evidence and arguments on employer's fault. And *McGranahan*, 249 Kan. at 339, held only that a settlement stipulating that a portion was

14

for loss of consortium was binding on the employer when calculating its subrogation lien, since the trial court approved the settlement as fair, just, equitable, and supported by evidence. Moreover, the *McGranahan* employer did not try to introduce evidence undercutting the stipulation or show the parties acted in bad faith. 249 Kan. at 338-39.

*Houston v. Kansas Highway Patrol*, 238 Kan. 192, 195-96, 708 P.2d 533 (1985), *overruled on other grounds by Murphy v. IBP, Inc.*, 240 Kan. 141, 727 P.2d 468 (1986), at first blush, lends Southwest's position some support. The *Houston* court held an employee's entire settlement with a negligent third party was subject to the employer's lien, despite the employee's claim the settlement addressed personal losses outside the scope of the lien. But that settlement was not itemized, so the court reasoned,

> "Had the settlement documents clearly stated a certain amount was specifically for these personal noncompensable losses and had such amount been supportable in fact (as opposed to an effort to circumvent the operation of the statute), a much stronger argument in support of claimant's position could have been made. Such is not the situation before us." (Emphasis added.) 238 Kan. at 196.

More importantly, the *McGranahan* court later clarified this language from *Houston* meant only that findings must be supported in some fashion by substantial competent evidence. *McGranahan*, 249 Kan. at 338. The point is that *Maas*, *McGranahan*, and *Houston*, taken together, might permit using a settlement's contemporaneous fault allocation to satisfy K.S.A. 44-504(d) when supported by substantial competent evidence and approved by a court. But they do not make that the only way to establish this finding. In other words, our caselaw does not hold K.S.A. 44-504(d) inapplicable when employer negligence is found to have contributed to the worker's injury through other means.

15

Finally, we address amicus National Association of Subrogation Professionals' public policy contentions that relying on the jury's fault determination after a settlement allows an employee to defeat a settlement's finality by "collaterally attack[ing]" it. The amicus describes hypothetical scenarios that would not work if using a later fault determination, such as when an employer seeks a lien determination before trial, or if the trial ends without a fault determination, such as a directed verdict. And it argues other adverse effects from permitting this practice.

In particular, the amicus suggests Hawkins used the trial to "destroy [Southwest's] subrogation lien" by pursuing the jury verdict "after the primarily liable defendants became immune, and after those defendants lost interest in this case." It contends permitting a "subsequent fault determination to be applied to a prior, separate recovery to negate a substantial lien" will increase insurance premiums by decreasing how much an employer benefits from subrogation. And it claims the panel's decision forces "employers, large or small" to "retain lawyers to intervene into all personal injury actions to defend against a last-minute suggestion of employer fault or conversely to advocate for a lower damage award." This, the amicus alleges, conflicts with the Workers Compensation Act's purposes by causing employers to become adversaries against their employees. Lastly, it claims fairness and predictability favor contemporaneous fault determinations because the available information underlying settlement decisions can change as litigation progresses.

But litigating the extent of an employer's subrogation interest does not "collaterally attack" a settlement agreement. It simply fixes the employer's right to stand in the employee's shoes with respect to the proceeds. "Subrogation is the substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he or she who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." 16 Couch on Insurance § 222:2. And to

16

the extent the statute pits employers and employees against one another or encourages employers to intervene in civil lawsuits to protect their rights, these influences remain at the settlement stage as well.

The simple reality is that an employer who does not participate in settlement negotiations may find its lien reduced by a bad bargain struck by the employee or a stipulation without the employer's input on the employer's fault for the employee's injuries. See 10 Larson's Worker's Compensation Law § 116.07[1] ("Just as the employee needs to be protected from dispositions of third-party rights by compensation carriers motivated solely by carrier self-interest, so the carrier sometimes needs to be protected from improvident dispositions of third-party rights by employees."). In Kansas, K.S.A. 44-504(b) requires employers receive notice of an injured employee's third-party action and guarantees that employer the right to intervene and participate to protect its interests. What the employer does with this notice and right to intervene is left to the employer under our legislative scheme.

We hold the panel, Board, and ALJ correctly used the *United Rentals* jury's 25% fault allocation to determine Southwest and Travelers' lien and future credits. This administrative-level finding is supported by substantial competent evidence. And Hawkins and Southwest stipulated to the jury's verdict for the purposes of the lien dispute. Put simply, a jury's fault finding against an employer in a comparative fault case can supply an adequate evidentiary basis for lien reduction depending on the circumstances. In this instance, the ALJ and the Board properly looked to the jury's fault finding in making their determinations, and Southwest made no effort to prove a lesser degree of fault at the agency level.

*(2) Determining the "recovery" amount*

Southwest next argues the panel erred by using the jury's $4,081,916.50 damages award to calculate its lien and future credits, preferring instead to use the $1.5 million JLG settlement amount. Southwest contends the jury's award was not a "recovery" within K.S.A. 44-504(d)'s meaning. We agree.

The parties stipulated Travelers had paid $852,460.34 when it invoked its lien in the administrative action. Under the general rule from K.S.A. 44-504(b), "[i]n the event of [an injured worker's] *recovery* . . . by judgment, settlement or otherwise" from a third party, like JLG, an employer, like Southwest, "shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of *such recovery* and *shall have a lien therefor against the entire amount* of such *recovery*." (Emphases added.) This means Southwest would have a subrogation interest "against the entire amount of" the $1.5 million settlement. And since Southwest continues making medical aid payments, the settlement amount "actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of such judgment" would be "credited against future payments of the . . . medical aid." K.S.A. 44-504(b). That is, any money received from the JLG settlement over the $852,460.34 would be credited against Travelers' additional medical aid payments.

But the next step requires reducing that subrogation interest, using the 25% fault determination discussed above. Subsection (d) explains,

> "If the negligence of the worker's employer . . . is found to have contributed to
> the party's injury, the employer's subrogation interest or credits against future payments
> of compensation and medical aid, as provided by this section, *shall be diminished by the*

18

*percentage of the recovery attributed to the negligence of the employer* . . . ." (Emphasis added.) K.S.A. 44-504(d).

Court decisions applying this provision have calculated the reduction as a dollar amount represented by the product of the fault percentage and the "recovery" from which the employer seeks to recoup its expenses—although there is admittedly some confusion about what is meant by the "recovery" amount. See *Brabander*, 248 Kan. at 918; *Enfield*, 228 F.3d at 1252.

Subsection (b) recognizes an employee may obtain a "recovery . . . by judgment, settlement or otherwise" and grants the employer a lien "against the entire amount of such recovery," excluding "any recovery, or portion thereof" representing damages for loss of consortium or spousal services. This lien is for the employer's workers compensation payments "to the date of such recovery." And the statute determines the future credits by reference to the amounts paid before "the date of recovery of such judgment, settlement or recovery otherwise." So if the judgment, settlement or "recovery otherwise" is "recovered" while workers compensation payments are continuing, the employer receives a credit for its expenses after the "date of recovery" for amounts "actually paid and recovered" that exceed the initial lien amount. K.S.A. 44-504(b). Subsection (d) then requires the lien and credit be diminished by the "percentage of the recovery attributed to" the employer's negligence.

In one sense, subsection (b) equates "recovery" to a "judgment, settlement or otherwise" by signaling that the dollar value of a judgment or settlement is what is meant by providing the lien is for the "entire amount of such recovery." And from this perspective, "recovery" means "[t]he obtainment of a right to something (esp. damages) by a judgment or decree" or "[a]n amount awarded in . . . a judgment or decree." Black's Law Dictionary 1528 (11th ed. 2019) (defining "recovery"). But in another sense, the

19

statute refers to what Black's describes as the "amount . . . collected from a judgment or decree," as in amounts "actually paid *and recovered*." (Emphasis added.) K.S.A. 44-504(b).

If the word "recovery" in subsection (d) means what it means in subsection (b), then it refers either to the judgment, settlement, or other recovery amount, or the "amount . . . collected from a judgment or decree." And under ordinary statutory construction principles, the word should take on the same meaning wherever it appears in the same statute. See *Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, 685, 847 P.2d 1292 (1993). Since subsection (d) concerns adjusting the lien amount, and the lien operates against the recovery before the amounts are "actually paid and recovered," then "recovery" must mean the amount of a "judgment, settlement or recovery otherwise." The jury's $4,081,916.50 damage determination is not a recovery because it is none of those things—there is no party against whom a judgment could be issued to recover money from, and Hawkins gained nothing from it.

Hawkins takes a contrary position, stemming from his reading of the Tenth Circuit's decision in *Enfield*. In that case, when a jury verdict resulted in a judgment against a third party and a finding of 50% employer fault, the *Enfield* court held the employer's reduced subrogation interest in the judgment must be determined by multiplying the employer's fault percentage by the whole amount of the damages determined by the jury—not just the amount the third party was responsible for paying. And since the employer was 50% at fault, the reduction effectively eliminated the subrogation interest.

The *Enfield* court focused on the term "recovery" in subsection (d) and concluded "recovery" meant the entire damage award. It reasoned that "recovery" could not mean "the actual amount recovered by the employee from the third-party tortfeasor" because it

"will never include any amounts attributable to the negligence of the employer." *Enfield*, 228 F.3d at 1250. That construction, the court continued, would "effectively nullif[y]" subsection (d) "since there [would be] no diminishment of the employer's subrogation." 228 F.3d at 1250. It concluded none of the amount "actually recovered from the third-party tortfeasor is attributable to the employer." 228 F.3d at 1250. The court observed that

> "the term 'recovery' has two different meanings, depending upon how it is used in the statute. As used in the first, second, and fourth instances in the . . . sentence, the term refers generally to a 'vindication of rights' by way of money damages. In the third instance (i.e., 'date of recovery'), it refers to the time when the amount of money is collected." 228 F.3d at 1250-51.

In the *Enfield* court's reasoning, defining recovery to mean "the amount of money or damages actually collected" would give the word a third meaning, used only for the purpose of subsection (d). The court believed this interpretation violated "the 'basic canon of statutory construction that identical terms within an Act bear the same meaning.'" 228 F.3d at 1251. The court continued,

> "The question is therefore how to interpret the term 'recovery' as used in subsection (d) to avoid these problems. Although the [employer] could perhaps argue that in a case such as this the term should refer only to the judgment entered by the trial court, we conclude that would be inappropriate because the statute specifically employs the term 'judgment' in other portions of § 44-504. In other words, had the Kansas legislature intended the term 'recovery,' as used in subsection (d), to refer to a judgment, it presumably would have said so. In our view, the only workable solution is to adopt the broad definition of 'recovery' that is employed, with the one exception noted above, throughout subsection (b) of the statute, i.e., a vindication of rights by way of money damages. In a case such as this that proceeds to a jury verdict, the term would encompass the total damage figure decided by the jury (and the result would be the same as if the

21

pre-1993 version of subsection (d) had been applied). In cases involving settlements, it would encompass the total amount of the settlement." 228 F.3d at 1251-52.

The *Enfield* court also rejected the employer's contention that substituting "recovery" for "damage award" in the 1993 amendment was meant to abrogate *Brabander*—which reached the same result under the statute's prior language requiring the subrogation interest to be reduced by the percentage of the "damage award" attributable to the employer's negligence—"'in a manner to benefit the employer.'" 228 F.3d at 1252. The court reasoned

> "there is little, if any, support for the [employer's] arguments. There is no legislative history to which we can refer, and the timing of the amendment (i.e., two years after *Brabander*) is less than persuasive authority for the notion that the legislature intended the amendment as a response to *Brabander*. In our view, it is likely the term 'recovery' was utilized by the legislature to signal that the lien reduction would apply whenever there is a vindication of legal rights by way of money damages, regardless of whether that vindication occurs in the context of a trial (and a damage award) or a settlement (and a settlement amount). This interpretation is consistent with the decision in *Maas*, which specifically held that subsection (d), as amended in 1993, applies to third-party actions that are settled." *Enfield*, 228 F.3d at 1252.

But reliance on *Enfield* for this case is misplaced because it did not address the employer's subrogation interest in settlement proceeds. And while we differ with the *Enfield* court's conclusion on the meaning of the word "recovery" in K.S.A. 44-504(d), for the purposes of this case that is a distinction without a difference. The only "vindication of rights by way of money damages" at issue here is the JLG settlement, which is a recovery distinct from any judgment based on the later jury verdict. See 228 F.3d at 1251.

22

For its part, the panel also recited what it perceived as public policy justifications for calculating the subrogation interest reduction using the jury's damage determination, believing its approach "addresses and corrects the inequity in denying a reduction in the employer's subrogation lien or future credit based on its adjudicated fault for the employee's injuries" and "align[ed] with the liability the employer would have faced in the employee's civil action but for the workers compensation bar." *Hawkins*, 58 Kan. App. 2d at 50. It observed that,

"Substituting the amount of a settlement between the employee and another party with potential fault and liability interjects an entirely different and off-kilter dynamic. A settlement, by its very nature, typically reflects a compromise that nobody thinks particularly represents the injured party's realistic recovery from the defendant in a trial. The amount is acceptable to each side, taking account of the often substantial costs and risks of litigation. Economic certainty supplants litigation brass, as plaintiffs accept less than they believe they deserve and defendants pay more than they think they should or would owe. That artificiality is accentuated in a comparative fault case with multiple actual and phantom defendants. A given defendant may realistically face only some portion of the overall fault, so its potential liability could look quite different from other defendants. What it may be willing to pay in settlement should be quite different, as well.

"In short, the amount JLG spent to buy its peace in Hawkins' negligence action bears little or no obvious correlation to what the jury found as to Southwest Kansas Co-op's fault and Hawkins' damages. Neither the language in K.S.A. 44-504(d) nor a logical application of comparative fault principles suggests using JLG's settlement with Hawkins to establish the dollar amount to which the jury's finding of fault attributable to Southwest Kansas Co-op should be applied to calculate the reduction of its lien and future credit." 58 Kan. App. 2d at 54-55.

The panel accurately points out some flaws in using settlement proceeds as a stand-in for jury damage determinations that more accurately measure the harm suffered by the injured employee under our system of jurisprudence. And it is true that reducing

the lien by the value of the employer's contribution to the employee's harm tends to place the employer closer to the position it would be in but for the workers compensation bar. See *Hawkins*, 58 Kan. App. 2d at 50. But aligning an employer's workers compensation liability with what its civil liability would be without it is inconsistent with the workers compensation scheme's overall purpose. The Act strikes a balance between making an employer liable to pay compensation when an employee suffers personal injury by accident arising out of and in the course of employment in exchange for the employee surrendering the right to a civil action for damages against the employer or another employee. *Edwards v. Anderson Engineering, Inc.*, 284 Kan. 892, 896, 166 P.3d 1047 (2007).

More specifically, the subrogation statute's primary purposes are preserving the employee's actions against third-party tortfeasors and preventing the employee's double recovery. *McGranahan*, 249 Kan. at 334; *Loucks*, 272 Kan. at 715. And a subrogation statute's "central objective is to provide the mechanics" for the third party to pay "what it would normally pay if no compensation question were involved; the employer and carrier 'coming out even' by being reimbursed for their compensation expenditure; and the employee getting any excess of the damage recovery over compensation." 10 Larson's Workers Compensation Law, § 116.02. Subsection (d), which softens this objective, is atypical because the employer's "reimbursement amount is not usually reduced by the percentage of the employer's fault."10 Larson's Worker's Compensation Law, § 117.01[1].

While K.S.A. 44-504(b) confers on the employer a lien against any "recovery" from a third-party tortfeasor for the employer's past expenses—and credit against future expenses for amounts the employee receives from the recovery in excess of that—K.S.A. 44-504(d) requires a subrogation lien or future credit reduction by the percentage *of the recovery* in which the lien is sought—in this case the JLG settlement—attributable to the

employer's fault. See *Brabander*, 248 Kan. at 918. The judgment against or settlement with a third party ordinarily would not include amounts attributed to the employer's negligence, yet the statute requires reduction all the same. So if the Legislature intended the lien or future credits be reduced by the employer's proportionate share of the employee's total damages instead, it could have required this—but that is not what it required.

Our caselaw, applied here to the statutory language requiring a reduction by the "percentage of recovery," suggests the appropriate method for determining the reduction is to multiply the employer's fault percentage and the settlement amount. We hold the ALJ and Board properly applied K.S.A. 44-504. The panel erred by reducing Southwest's subrogation interest by the percentage of the *United Rentals* jury's $4,081,916.50 damage award attributable to Southwest's fault.

### *(3) The appropriate allocation*

Southwest and Travelers next argue the panel erred by remanding the case to the Board with instructions to consider each payment from JLG as a separate recovery when calculating its future credit. We agree.

The panel required the Board to "consider each annual payment to Hawkins under the JLG settlement as a recovery actually paid and calculate any credit based on the workers compensation benefits Southwest Kansas Co-op had provided through the date of the JLG payment, once those settlement payments less the benefits paid exceeded the lien deficit." *Hawkins*, 58 Kan. App. 2d at 57. This appears to permit Hawkins to retain the balance of any $75,000 payment exceeding the workers compensation payments in excess of the lien amount that had accrued on the date the funds are received. That was error.

25

Under K.S.A. 44-504(b), when workers compensation payments are continuing on the date of a settlement, "the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of such . . . settlement . . . shall be credited against future payments of the compensation or medical aid." From context, "future payments" refers to payments made after the date of recovery. So when the JLG settlement payments exceed the lien amount determined by the Board, every dollar "actually paid and recovered" thereafter—to the extent of the future credits permitted by the Board—should be credited against workers compensation payments made after the settlement date, even if those payments have not yet been made. The panel erred by viewing the future credit as amounts paid by the employer instead of amounts recovered by the employee.

CONCLUSION

We hold the ALJ and the Board correctly calculated Southwest's subrogation interest. The Court of Appeals judgment is affirmed in part and reversed in part. Judgment of the Board is affirmed.